ENTERED FEB 2 7 2015

STATE OF MAINE

Cumberland, ss.

BUSINESS AND CONSUMER COURT

AMH-CUM-02-18-15

DONALD PETRIN, et al.

Plaintiffs-Appellants

v.

THE TOWN OF SCARBOROUGH

Defendant-Appellee.

Docket No. BCD-AP-14-03

## DECISION AND JUDGMENT

This is an appeal, pursuant to Rule 80B of the Maine Rules of Civil Procedure, from a decision of the Town of Scarborough's Board of Assessment Review, denying the Appellants' requests for tax abatement on their properties. The Appellants in their brief advance three distinct grounds on which the Board's denial of their abatement requests should be reversed:

1) the Assessor's partial revaluation of 2012 resulted in unjust discrimination as it was improper in its scope and relied on flawed data;

2) the Assessor's "excess land" program is discriminatory; and

3) the Town's 2012 assessment program resulted in an unequal and thus unlawful apportionment of the overall tax burden, disfavoring properties located on or near the ocean in favor of other residential properties in Scarborough

Based on these arguments, the Appellants contend that the 2012 assessments of their properties were manifestly wrong, and that the Board's denial of their abatement requests should be reversed.

## I. FACTUAL BACKGROUND

Appellant taxpayers own properties on or near the Atlantic Ocean in the Higgins Beach, Pine Point, and Pillsbury Shores neighborhoods of Scarborough.

1

The Town of Scarborough Assessor last conducted a town-wide valuation of residential property in 2005. In 2012, after analyzing sales data for the period after the town-wide valuation, Assessor Paul Lesperance (who has since retired) undertook a partial revaluation of Town residential properties, focusing on specific neighborhoods on or near the ocean, and omitting interior neighborhoods.

As a result of the partial revaluation, the Assessor increased the assessed value of the residential properties in the targeted neighborhoods, including the properties owned by the Appellants. (R. 307.) The assessed value of properties in other Scarborough neighborhoods remained the same. *Id.* The overall result of the 2012 partial valuation is that water-influenced property[1] in Scarborough bears a higher proportion of the Town property tax burden than it did before the partial revaluation.

The Appellants appealed their increased assessments to the Board of Assessment Review (the "Board"), which consolidated the appeals, held hearings, and unanimously denied the appeals on December 18, 2013. (R. 309.)

## II. STANDARDS OF REVIEW

### 1. Rule 80B Generally

In a Rule 80B appeal, the Superior Court reviews findings made by the municipal decision maker to determine whether those findings were based upon an "erroneous interpretation of the law" or based upon conclusions of fact not "supported by substantial evidence on the record as a whole." *Bruk v. Town of Georgetown*, 436 A.2d 894, 897 (Me. 1981). "Substantial evidence is 'evidence that a reasonable mind would accept as sufficient to support a conclusion.'" *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172 (quoting *Sproul v.*

---

[1] This Decision and Judgment uses the term "water-influenced property" to encompass real property on or near the ocean or another water body, including waterfront property, waterview property, and other property near water.

2

*Town of Boothbay Harbor*, 2000 ME 30, ¶ 6, 746 A.2d 368). The court must affirm the decision of the [Board] unless that decision was unlawful, arbitrary, capricious, or unreasonable." *Driscoll v. Gheewalla*, 441 A.2d 1025, 1026 (Me. 1982). Procedural unfairness is reversible error and a "decision can be 'arbitrary and capricious' if it was not the product of the requisite processes." *Hopkins v. Dep't of Human Servs.*, 2002 ME 129, ¶ 12, 802 A.2d 999 (citations omitted). "That the record contains evidence inconsistent with the result, or that inconsistent conclusions could be drawn from the evidence, does not render the [Board's] findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the [Board's] conclusion." *Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me. 1992). The party seeking to overturn the decision bears the burden of persuasion on appeal. *Town of Sw. Harbor v. Harwood*, 2000 ME 213, ¶ 6, 763 A.2d 115, 117 (citing *Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 13 760 A.2d 257).

2. Municipal Tax Assessments

The court presumes tax assessments are valid. *Ram's Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, ¶ 9, 834 A.2d 916. "A taxpayer who seeks a tax abatement must prove that the assessed valuation is 'manifestly wrong.'" *Terfloth v. Town of Scarborough*, 2014 ME 57, ¶ 12, 90 A.3d 1131. A taxpayer can prove an assessment is manifestly wrong by showing:

1) the judgment of the assessor was irrational or so unreasonable in light of the circumstances that the property was substantially overvalued and an injustice resulted;

2) there was unjust discrimination; or

3) the assessment was fraudulent, dishonest, or illegal.

*Yusem v. Town of Raymond*, 2001 ME 61, ¶ 9, 769 A.2d 865. To prevail on a claim of unjust discrimination, taxpayers must demonstrate "that the assessor's system necessarily results in

3

unequal apportionment." *Ram's Head*, 2003 ME 131, ¶ 10, 834 A.2d 916 (quoting *City of Biddeford v. Adams*, 1999 ME 49, ¶ 14, 727 A.2d 346). Because the Board concluded that the Appellants failed to meet their burden of proof, this court will vacate the Board's decision denying tax abatement "only if the record compels a contrary conclusion to the exclusion of any other inference." *Terfloth*, 2014 ME 57, ¶ 13, 90 A.3d 1131.

## III.    DISCUSSION

The legal backdrop for the analysis was summarized by the Law Court in *Weekley v. Town of Scarborough*:

> The Maine Constitution requires that "[a]ll taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8. "Just value" means market value. *Alfred J. Sweet, Inc. v. City of Auburn*, 134 Me. 28, 31, 180 A. 803 (1935). "The sale price of property is evidence of market value, which is used in determining property value for tax assessment purposes." *Wesson v. Town of Bremen*, 667 A.2d 596, 599 n. 5 (Me.1995). *See also Shawmut Inn v. Town of Kennebunkport*, 428 A.2d 384, 394-95 (Me.1981) ("market value" is "the price a willing buyer would pay a willing seller at a fair public sale ... in a free and open market."); *Arnold v. Maine State Highway Comm'n*, 283 A.2d 655, 658 (Me.1971) ("evidence of what the property sold for in a bona fide sale is *most significant*.") (citation omitted).

676 A.2d 932, 934 (Me. 1996).

By statute, municipalities are required to maintain property assessments within a range of assessment ratios (ratio of assessed value to market value)—a minimum of 70% and a maximum of 110%. *See* 36 M.R.S. § 327(1). Thus, ongoing review and adjustment of assessments are necessary to assure that appropriate assessment ratios and, ultimately, equal apportionment of the overall tax burden, are maintained.

The Law Court has noted that, although "[t]ownwide revaluations are perhaps the best method of maintaining equal apportionment of the tax burden . . . assessors are not precluded from undertaking adjustments designed to maintain equal distribution of the tax burden in the time period between townwide revaluations." *Moser v. Town of Phippsburg*, 553 A.2d 1249, 1250

4

(Me. 1989).[2] In *Moser*, the Law Court held that such partial revaluations are an acceptable means of maintaining an equal distribution of the tax burden. *Id.*

The first of the three grounds advanced by the Appellants focuses on the method by which Town conducted the partial revaluation that resulted in the increased assessments of Appellants' properties.

### 1. The Appellants' Challenge to the Town's Partial Revaluation

In this case, the Appellants' parcels are located in three discrete neighborhoods within the Town of Scarborough: the Higgins Beach shorefront, the Pine Point shorefront, and the interior part of the subdivision known as Pillsbury Shores. (R. 307.) The last townwide revaluation in Scarborough took place in 2005. (R. 1259-60.) The objective of the 2005 revaluation was to assess all taxable real properties in the Town at or as close as possible to 100% of their market value. *Id.*

As did the municipality in *Moser*, the Town of Scarborough has monitored property sales each year and, based on its analysis of qualifying sales, made upward or downward adjustments in the assessment of specific properties. The purpose of such partial revaluations is to maintain assessments in line with the Town's overall ratio verified by Maine Revenue Services during the agency's annual audit.

---

[2] The facts of *Moser* are summarized in the opinion as follows:

> The assessors increased the valuation of all properties by 30 percent in 1982. Then in 1985 the assessors identified certain large-lot subdivisions in close proximity to the Kennebec River as having substantially increased in fair market value (largely due to the cleanup of the Kennebec River) and increased their valuation by fifty percent. Not every structure in the area was included. In addition, certain properties outside the area were included ("unusual architecturally-designed structures designed to fit a specific lot and structures that gain in value from their unique combination of land and buildings"). The plaintiff taxpayers, owners of real estate in the singled out area, challenged the increase.

553 A.2d at 1249-50.

5

In determining the 2012 land assessments, the Town assessor at the time, Paul Lesperance[3] ("Mr. Lesperance" or the "Assessor"), determined that, though residential properties were following a sales ratio close to 100%, waterfront and water-influenced neighborhoods were tracking significantly lower at 70-80% ratios of assessed value to value on sale. (R. 1263.) Thus, in accordance with the Town's method of assessment mentioned above, Mr. Lesperance focused on the neighborhoods in which he determined that property assessments were at significant variance from the Town average. In total, Mr. Lesperance adjusted the land valuations of 754 parcels, including those owned by the Appellants.

The revaluation resulted in a 20% increase in assessed value for the Higgins Beach waterfront, a 25% increase for the Pine Point waterfront, and a 17% increase to the interior parcels in the Pillsbury Shores neighborhood. The Appellants argue that there was no evidence in the record before the Board that would allow it to conclude that these increases tended to equalize apportionment of the tax burden within the town. However, as noted previously, "assessors are not precluded from undertaking adjustments designed to maintain equal distribution of the tax burden in the time period between townwide revaluations." *Moser*, 553 A.2d at 1250. Rather, only a "rough equality" in tax treatment of similarly situated property owners is constitutionally required. *Id.* (quoting *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 343 (1989)).

Before the Board, the Town offered several exhibits to rebut Appellants' claims of unfair treatment. These exhibits compared the pre-revaluation assessments for interior neighborhoods with the pre-revaluation assessments for the water-influenced neighborhoods that were subject to the partial revaluation. *See, e.g.,* (R. 1224-25.) The exhibits indicated that,

---

[3] Paul Lesperance has since retired as the Town's Assessor. However, he previously held the position since 1984 and was responsible for the 2012 valuation. Mr. William Healey is the current Assessor as of the spring of 2013.

before the partial revaluation, the assessments for interior, non-water-influenced properties were tracking much closer to 100% of the property's value based on sales than those for the water-influenced properties in the revalued neighborhoods. Pre-valuation assessments in the water-influenced neighborhoods were significantly lower than market sale prices in those neighborhoods. Thus, the assessor's decision to limit the partial revaluation to water-influenced properties, and the Board's denial of the Appellants' challenge to that decision, are both supported by substantial evidence.

Another basis on which the Appellants challenge the revised values assigned to their properties is that the Assessor relied on old sales dating back to 2006, the year after the last townwide valuation. They argue that such reliance is wrong as a matter of law and also wrong because it ignores the impact on property values of the downturn in the national economy that began in 2008 ("the Great Recession").[4]

Their legal argument against the Assessor's reliance on older sales data rests on an advisory opinion from the Supreme Judicial Court of Maine regarding a bill in the Maine State Legislature that would have altered the method for property tax valuation. *See Opinion of the Justices*, 2004 ME 54, 850 A.2d 1145. The Justices were asked to advise the Legislature on the constitutionality of a bill that, on its face, would have created "two different bases for tax value purposes: one for property acquired before the 1996-97 assessment and one for all property acquired after that assessment." *Id.* ¶ 13. Taxpayers who purchased their property before the 1996-97 assessment would be assessed at a value based on the assessment from the 1996-97 tax

---

[4] Appellants initially argued that relying on the old sales was improper regardless of external conditions, but in their reply brief they appear to abandon this argument. *Compare* Pls.' 80B Brief at 7 ("Appellants respectfully submit that there is no situation in which such a reliance [on old sales] would be reasonable . . . .") *with* Pls.' Reply Brief at 1 ("Appellants take no position as to whether a reliance on old sales might be proper in cases where there has not been a sea change in the market in intervening years.").

7

year, while those who acquired their property since that year would be assessed at a more recent appraisal value. *Id.*

A majority of the Justices concluded that such a system was unconstitutional for two reasons: 1) because it "runs afoul of the requirement that a valid property tax must be based on market value", *id.* ¶ 16, and 2) because it would lead to "the disparate taxation of two similar or identical properties" resulting in unjust discrimination. *Id.* ¶ 18.

The present case is readily distinguishable from the bill at issue in the *Opinion of the Justices.* The Assessor relied on sales dating back to 2006, but also relied on sales from subsequent years forward to 2012. The Town's partial revaluation also applied the same methodology to all properties subject to the revaluation in determining whether adjusted assessments were warranted, whereas the proposal disapproved in *Opinion of the Justices* involved a two-tier system. The court concludes that the Appellants have not shown that the Assessor's use of some sales from 2006 is unconstitutional or otherwise unlawful. *See Shawmut Inn v. Inhabitants of Town of Kennebunkport,* 428 A.2d 384, 390 (Me. 1981).

Appellants' alternative basis for objecting to the Assessor's reliance on older sales data is that the Great Recession had such a significant negative effect on property valued as to render sales predating the downtown unreliable and irrelevant to current market values. Appellants rely on their expert George Koutalakis, who testified that the Great Recession had an impact on property values in Scarborough, including Appellants' properties. Koutalakis explained that he performed a paired sales analysis[5] for 22 properties throughout Scarborough that sold before and after the Great Recession. (R. 887-88; 1389.) According to his findings, all 22 of the properties sold for less after the Great Recession than before it. *Id.* Next, Koutalakis found paired sales for three properties, one each in Higgins Beach, Pine Point, and

---

[5] A paired sales analysis looks at sales of the same property at two different times. (R. 1389.)

8

Prouts Neck showing that the properties sold for less after the recession. (R. 811-16; 1390-91.) Finally, Koutalakis prepared a report on property values in Prouts Neck, which looked at four sales and four listings of property that have not sold. *Id.*

Appellants' reliance on the Koutalakis analysis is misplaced for several reasons. First, Koutalakis's paired sales study was not limited to water-influenced properties, but included interior properties. (R. 1407-08.) Thus, what it showed was that the Great Recession caused a decline in property values town-wide. It did not analyze separately the effect of the Great Recession on the water-influenced properties that were revalued. Second, the Koutalakis study did not establish that the market values of water-influenced properties fell below their assessed values as a result of the Great Recession. In some of Koutalakis's paired sales properties, both the prior sale price and the later, lower sale price were above the pre-valuation assessed value, (R. 1144-45.) The fact that real property market values fell during the Great Recession does not, in itself, mean that they fell to below assessed value.

Finally, the Koutalakis analysis included data that the Assessor has shown should not be relied on as evidence of market value. For example, the Koutalakis analysis did not consider whether the assessment was based in part on changes to a structure on the land, whether the sale was an estate sale, or whether the taxpayer already received an abatement. (R. 1146-1202.) In fact, with such data excluded, the Koutalakis analysis indicates that the Great Recession affected the value of water-influenced properties less than the values of other property, and thus supports the Assessor's decision to focus the partial revaluation on water-influenced properties. (R. 1442-46.)

2. The Appellants' Challenge to The Town's "Excess Land" Program

Appellants' second ground for contesting their assessments is that the Town of Scarborough undervalues what the Town defines as "excess land" and thereby renders the

9

Town's assessment program as being discriminatory on its face. During the Board hearing, the Assessor described the Town's "excess land program" as follows:

> **ATTORNEY SHUMADINE:** Let me see if I have this correct, the way that the excess land works is that you treat the first acre as the home lot and then everything above an acre you treat as excess land. Correct?
>
> **PAUL LESPERANCE:** Yes.
>
> **ATTORNEY SHUMADINE:** So everything above one acre is not taxed at market value because it is taxed as excess land which is considerably less than market value, is that correct?
>
> **PAUL LESPERANCE:** Yes, Town wide.

(R. 1319-20.)

As an example to prove their point, the Appellants cite to the Town's valuation of two abutting lots in the same ownership, a 1.27-acre lot on Massacre Lane assessed at $18,000, and a 1-acre lot assessed at $1.8 million on Black Point Road. (R. 1423-24.) Mr. Lesperance acknowledged that the Massacre Lane lot was buildable and could be sold separately, and that, viewed as a separate parcel, it has a market value much higher than its $18,000 assessed value. *Id.* However, he defended the low assessment on the ground that "as they are assessed as abutting owners they are treated as one parcel for assessment purposes." (R. 1424.)

The Appellants point out that the tax statute allowing abutting lots in the same ownership to be treated as one parcel for assessment purposes requires each lot to be at least five acres in area, *see* 36 M.R.S. § 701-A, meaning that the two lots at issue would not qualify. The Town contends that the Appellants have failed to provide any market evidence to demonstrate that the assessment practices for large lots or lots combined for assessment purposes are undervalued, or if they were undervalued, what the measure or impact would be or that any purported impact is unique to the appellants. However, the record indicates that the

10

Town has established a practice of valuing excess property, that is property beyond the first acre, at a rate inconsistent with market value. Paul Lesperance testified to this practice.

In Maine, "[l]ocal assessors have been given considerable leeway in choosing the method or combinations of methods to achieve just valuations." *Shawmut Inn*, 428 A.2d at 390. Further, it is clear that "tax assessors have a reasonable degree of discretion in determining where individual parcels exist, and if the assessors have acted reasonably in the discharge of their statutory responsibility to place a separate assessment on each parcel of real estate, the assessment will be upheld." *City of Augusta v. Allen*, 438 A.2d 472, 476 (Me. 1981). It is also undisputed that contiguous lots may be assessed as one parcel, depending on the circumstances. *Fickett v. Hohlfeld*, 390 A.2d 469, 471 (Me. 1978); *see also Allen*, 438 A.2d at 476 (rejecting argument "that a single parcel for tax assessment purposes may never be divided by a public road").

However, it is clear under Maine law that:

> [T]he very idea of taxation implies an equal apportionment and assessment upon all property, real and personal, according to its just value. The Court has recognized in the past, and now recognizes and decides, that all property should be considered and treated for purposes of taxation on an equal basis, and according to just value.

*Sears, Roebuck & Co. v. Inhabitants of City of Presque Isle*, 150 Me. 181, 185, 107 A.2d 475, 477 (1954) (*citing Brewer Brick Co. v. Inhabitants of Brewer*, 62 Me. 62, 73 (1873)) (internal quotation marks omitted); *Sawyer v. Gilmore*, 109 Me. 169, 171, 83 A. 673; *Hamilton v. Portland Pier Site District*, 120 Me. 15, 112 A. 836; *Opinion of the Justices*, 97 Me. 595, 597, 55 A. 827. Under the Maine Constitution, "all taxes upon real and personal estate . . . shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8. "Just value" is the equivalent of "market value." *Shawmut Inn v. Town of Kennebunkport*, 428 A.2d 384, 389 (Me. 1981). In determining "just value," assessors must "consider all relevant factors, including without limitation, the effect upon value of any enforceable restrictions to which the use of the

11

land may be subjected, current use, physical depredation, sales in the secondary market, functional obsolescence and economic obsolescence." 36 M.R.S.A. § 701-A.

Though Appellants have raised a valid question as to the legality of the Town's "excess land" program, for the following reasons, the court will not answer that question here.

Because the "excess land" program does not affect any of the Appellants' properties differently than it affects all residential property in Scarborough, the issue of standing arises. In the court's view, if the Appellants have standing to challenge the "excess land" program,[6] it is as taxpayers challenging a prospective assessment. In Maine, courts have adopted the preventive-remedial doctrine to determine whether a taxpayer has standing in a suit against a municipality. The doctrine recognizes the right of taxpayers to apply to the court for preventive relief in the case of threatened unlawful action by municipal officers, while denying standing to taxpayers seeking remedial relief for a wrong that has already occurred. *McCorkle v. Town of Falmouth*, 529 A.2d 337, 338 (Me. 1987); *Buck v. Town of Yarmouth*, 402 A.2d 860, 861-862 (Me. 1979); *Cohen v. Ketchum*, 344 A.2d 387, 390-392 (Me. 1975).

Maine taxpayers have no right to apply for remedial relief after the commission of an illegal municipal act affecting taxation where the act is one that affects the entire community and there is no particularized harm to the plaintiffs bringing the suit. *Tuscan v. Smith*, 130 Me. 36, 153 A. 289, 293 (1931); *see Tiling v. City of Portland*, 268 A.2d 888, 890 (Me. 1970). Thus, in the municipal setting, "taxpayers who do not allege and prove special injury have standing to seek only "preventive" relief from illegal actions by municipal officers." *Common Cause v. State*, 455 A.2d 1, 10 (Me. 1983). "Application of this doctrine is largely a definitional undertaking. If

---

[6] There is a question as to whether, even were preventive relief sought with respect to the Town's "excess land" program, only the Attorney General has standing here. *See Buck v. Town of Yarmouth*, 402 A.3d 860, 861 (Me. 1979) ("[A]n individual citizen who suffers no particularized injury from a public wrong can not seek relief from the courts; relief vindicating public rights must be sought by . . . the Attorney General of the State of Maine.") *See also Blodgett v. School Admin. Dist. No, 73*, 289 A.2d 407, 411 (Me. 1972). Whether only the Attorney General could maintain a preventive challenge to the Town's "excess land" program need not be decided now.

the relief sought by municipal taxpayers lacking special injury is deemed 'preven[]tive,' the courthouse door stands open; if the relief is deemed 'remedial,' that door swings shut." *Lehigh v. Pittston Co.*, 456 A.2d 355, 358 (Me. 1983).

In this case, the Appellants lack standing to achieve any form of remedial relief concerning the "excess land" program. The only relationship the Appellants have to the program is that they are taxpayers. The Appellants have failed to demonstrate in the administrative record that they have suffered particularized harm or loss as a result of the excess land program. Thus, if appellants are to have relief at all, they must demonstrate that they are entitled to preventive relief. *See Blodgett v. School Administrative District 73*, Me., 289 A.2d 407 (1972). Here, the Appellants have not challenged the prospective application of the program. Because the Appellants are not seeking preventive relief, the court finds they lack standing to challenge the Town's application of the "excess land" program.

### 3. The Appellants' Claim that the Town's Assessment Results in An Unequal and Discriminatory Apportionment of the Tax Burden

The third and final argument that the Appellants make in their Rule 80B brief is that, as a result of the partial revaluation, the Town has allocated the tax burden in an unequal, disproportionate manner that unlawfully discriminates against water-influenced properties.

The Appellants' burden to prove discrimination requires more than proof that the Town's assessment program does not allocate the tax burden with mathematical precision. "Neither the constitution nor the statutes expect that a Board of Assessors could make an assessment with all values so exact that no 'expert' could disagree with them." *Sears, Roebuck & Co. v. Inhabitants of City of Presque Isle*, 150 Me. 181, 189, 107 A.2d 475, 480 (1954). Rather, "[t]he constitutional requirement is the seasonable attainment of a rough equality in tax

13

treatment of similarly situated property owners."[7] *Ram's Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, ¶ 10, 834 A.2d 916 (citing *Allegheny Pittsburgh Coal Co., v. County Comm'n of Webster Cnty*, 488 U.S. 336, 343).

For example, the Law Court has said:

> The undervaluation of one set of similarly situated properties can support a finding of unjust discrimination, even when there is no undervaluation of the general mass of property. On the other hand . . . "[s]poradic differences in valuations," or "mere errors of judgment on the part of the assessors" do not necessarily establish unjust discrimination.

*Id.* ¶ 11, 834 A.2d 916 (quoting *Kittery Elec. Light Co. v. Assessors of the Town of Kittery*, 219 A.2d 728, 740 (Me. 1966)) (internal citations omitted); *see also Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 353, (1918) ("[M]ere errors of judgment by officials will not support a claim of discrimination. There must be something more-something which in effect amounts to an intentional violation of the essential principle of practical uniformity.").

Appellants in this case contend that the Town's 2012 assessment scheme was manifestly wrong in that it unjustly discriminates against owners of waterfront and water-influenced properties. To prevail on such claim, the Appellants must demonstrate "that the assessor's system necessarily results in unequal apportionment." *Rams Head*, 2003 ME 131, ¶ 10, 834 A.2d 916 (quoting *City of Biddeford v. Adams*, 1999 ME 49, ¶ 14, 727 A.2d 346). As mentioned above, the court will vacate the Board's decision denying tax abatement "only if the record compels a contrary conclusion to the exclusion of any other inference." *Terfloth*, 2014 ME 57, ¶ 13, 90 A.3d 1131.

---

[7] Article IX Section 8 of the Constitution of the State of Maine reads as follows:

> All taxes upon real and personal estate, assessed by authority of this state, shall be apportioned and assessed equally, according to the just value thereof . . . [but] the Legislature shall have power to levy a tax upon intangible personal property at such rate as it deems wise and equitable without regard to the rate applied to other classes of property.

Under State law, as noted above a municipality is required to meet certain minimum assessing standards. The municipality's ratio of assessment to sale price must be between 70% and 110% of just value. 36 M.R.S. § 327(1). Assessments must also meet a quality rating[8] of 20 or less. *Id.* § 327(2). These standards, however, do not apply to each individual assessment; they apply to the municipality or assessing area as a whole. (R. 1440-41.)

The evidence before the Board showed that the partial revaluation improved the assessment ratios and quality ratings in the areas targeted by the partial revaluation. (R. 1224-28.) As the Town pointed out in its brief, the neighborhood increases in the Higgins Beach, Pine Point and Pillsbury Shores areas where the Appellants own property resulted in assessment ratios closer to 100% and improved (or in the case of Higgins Beach, maintained) quality ratings. *See* Appellee's Brief at 8-9. Thus, the evidence indicates the partial revaluation brought the overall allocation of the tax burden closer to equality. Thus, the Appellants have failed to show that the assessor's methodology "necessarily results" in unjust discrimination against water-influenced properties in the Town-wide allocation of the tax burden.

## IV.    CONCLUSION

Based on the foregoing, the Appellants' appeal is denied. The decision of the Town of Scarborough's Board of Assessment Review is affirmed. Judgment is hereby awarded to the Appellee, together with its costs as the prevailing party.

Pursuant to M.R. Civ. P. 79, the clerk is hereby directed to incorporate this order into the docket by reference.

Dated February 16, 2015

A. M. Horton, Justice
Business & Consumer Court

---

[8] Quality rating is obtained by dividing the average deviation by the average ratio. 18-125 C.M.R. ch. 201, § 1(X) (2013). Deviation refers to the difference between an individual ratio and the average ratio. *Id.* § 1(M).

Entered on the Docket: 2-18-15
Copies sent via Mail ___ Electronically ✓

**Donald Petrin, et al. v. Town of Scarborough**
**BCD-AP-14-03**


**Donald Petrin, et al.**
  **Plaintiffs**

  Counsel:                          John Shumandine, Esq.
                                    PO Box 9785
                                    Portland, ME 04104

**Town of Scarborough**
  **Defendant**

  Counsel:                          Robert Crawford, Esq.
                                    Joel Moser
                                    PO Box 9729
                                    Portland, ME 04104