**Frances FARRELLY et al.**

v.

**INHABITANTS OF THE TOWN OF DEER ISLE.**

Supreme Judicial Court of Maine.

Oct. 31, 1979.

Silsby & Silsby by Anthony W. Beardsley (orally), Raymond L. Williams, William S. Silsby, Jr., Ellsworth, for plaintiffs.

Edwin R. Schneider, Blue Hill (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

This is an appeal by the Inhabitants of Deer Isle from five actions consolidated in the Superior Court and heard before a referee.

Plaintiff taxpayers, appellees in this case, appealed the decisions of the Assessors of the Town of Deer Isle denying their requests for abatement of real estate taxes assessed as of April 1, 1976. By agreement of the parties, the action in Superior Court was heard before a referee pursuant to R.53, M.R.Civ.P. The Referee recommended that the appeal be sustained and the request for abatement be granted. The defendant tax assessors[1] objected to the Referee's Report and moved that the case be remanded for further findings of fact and conclusions of law. The Superior Court overruled the objections, denied the motion, and ordered that the Referee's findings and recommended Order for Judgment be adopted and accepted. The Court further entered judgments for plaintiffs for abatements of 1976 real estate taxes in the amounts in excess of those based on the 1975 assessed values. This appeal followed.

We deny the appeal.

Appellants raise three issues on appeal:

(1) Whether the appellees, or any of them, are barred from a right to abatement of real estate taxes because of failure to file lists of their estates under 36 M.R.S.A. § 706.

(2) Whether the Superior Court erred in its denial of the defendants' motion to remand these cases to the referee for preparation of findings of fact and conclusions of law.

(3) Whether the appellees carried their burden of proving that their property was assessed in excess of its just value or that the assessors' judgment was irrational.

The first issue, compliance with 36 M.R.S.A. § 706, was apparently resolved by the Referee in favor of the taxpayers. The issue was clearly before the Referee on the pleadings of the parties. In his draft report prepared pursuant to M.R.Civ.P.R. 53(e)(4) to which the referee referred in his final report, he noted that his opinion was based on "*a careful review of the evidence, exhibits, and law.*" One of the exhibits before the Referee was defendants' Exhibit 1, a letter from counsel for the plaintiffs to counsel for the defendants identifying all of the plaintiffs, with the exception of Frances Farrelly,[2] as non-residents of Deer Isle on April 1, 1976. The letter stated further that to their knowledge, none of the non-resident taxpayers had received notice to file a "*list of polls.*"

Predecessor statutes to § 706 gave blanket exemptions to non-resident taxpayers from the requirement of filing lists. *See Portland Terminal Co. v. City of Portland,* 129 Me. 264, 151 A. 460 (1930). Apparently, the filing statute applicable to 1976 tax assessments and abatements contemplated that the filing requirements would apply to all "*owners,*" resident or non-resident, who received "*notice*" to file. Although the statute then in effect required the assessors to "*give seasonable notice in writing to all persons liable to taxation in the municipality or primary assessing area to furnish . . . true and perfect lists of all their estates . . .*", the statute apparently contemplated the possibility that some persons might not receive such notice. It further provided:

> The notice to owners may be by mail directed to the last known address of the taxpayer or by any other method that provides reasonable notice to the taxpayer.
>
> If any person *after such notice* does not furnish such list, he is thereby barred of his right to make application to the assessors . . . or any appeal therefrom for any abatement of his taxes, unless . . . [Emphasis added].

Defendants stipulated that "*there was no individual communication in writing directed by postage or anything like that to these five taxpayers.*" They stated that they

---

1. Following oral argument in this Court the parties agreed by stipulation to substitute the "*Inhabitants of the Town of Deer Isle*" for the "*Assessors of Municipality of Deer Isle*". This mooted the issue raised on appeal as to the proper party defendant. *See, Bristol v. Eldridge,* Me., 392 A.2d 37 (1978).

2. Defendants concede that Frances Farrelly complied with the filing requirements of § 706.

posted notice at four locations in Deer Isle in late March, and published notice in the Deer Isle newspaper and in the 1975 Annual Town Report, prepared prior to the 1976 town meeting. They contend that this was sufficient to comply with the notice requirements of the statute. Plaintiffs contend that this was not *"reasonable notice to the taxpayer*[s]," all of whom, save one, resided outside of the Deer Isle, Maine area. Plaintiffs did file lists with their applications for abatement.

▇▇▇ Although the Referee did not specifically make a finding on the question of compliance with 36 M.R.S.A. § 706, he must necessarily have found for the plaintiffs on this question in order to proceed to the merits of the case and to find the plaintiffs entitled to an abatement. It is well established that where no findings of fact or conclusions of law are stated separately pursuant to Rule 52

> *we must proceed on the assumption that the trial Justice found for the appellee on all factual issues necessarily involved in the decision, and the findings thus assumed to have been made will not be set aside by this Court unless shown to be clearly erroneous.*

*Bangor Spiritualist Church, Inc. v. Littlefield*, Me., 330 A.2d 793, 794 (1975); *Blue Rock Industries v. Raymond International, Inc.*, Me., 325 A.2d 66, 73 (1974); *Jacobs v. Boomer*, Me., 267 A.2d 376 (1970). Based on all of the above, we cannot say that it was *"clearly erroneous"* for the Court to find the facts as he did. On review, we agree with the implicit conclusion of law below that the non-resident taxpayers did not receive *"reasonable notice"* required by the statute.

They were not then barred from seeking abatement under 36 M.R.S.A. § 706.

▇▇▇ In this connection, defendants raise more generally the question of whether it was error to deny their motion to remand for findings of fact and conclusions of law. It is true, as defendants point out, that the order of reference directed the referee *"to try this case and to make report of his findings of fact and conclusions of law . . . ."* The Referee's Report refers to his draft report as setting forth his reasons for granting relief; the draft report is therefore properly considered incorporated into the Report of the Referee. That Report contains the following conclusions of law:

[1] *As compared with the 1975 assessments, the increase is prima facie arbitrary casting the burden on the assessors to justify.*

[2] [T]*he Referee is of the opinion that the 1976 assessments in all five (5) cases . . . were arrived at arbitrarily and cannot be sustained;*

[3] *It is possible that the 1975 assessments should be increased to a reasonable degree for the year 1976, but until the Referee receives some suggestions as to what increase the record of the case would justify, the Referee would be compelled to resort to 1975 assessments for the year 1976;*

Likewise, it contains the following findings of fact:

[1] *The evidence in the case fails the assessors;*

[2] *Apparently . . . they* [the assessors] *adopted certain formulas for arriving at the 1976 assessments in these five (5) cases;*

[3] *Mr. Atwood was an expert witness for the appellants'* [h]*is qualifications as a real estate appraiser are . . . of the highest;*

[4] *His testimony fully supports the conclusion of the referee that in all five (5) cases the 1976 assessments were arrived at arbitrarily and cannot be sustained;*

[5] *It is common knowledge that shore frontage in Maine has substantially increased in value say, during the last ten (10) years. But taxes should*

*not be assessed at peak periods, as Mr. Atwood points out.*[3]

Although further and more detailed findings would have been desirable in this case, the Superior Court apparently found the findings adequate to comply with its order and to support a judgment in favor of the plaintiffs.[4] The Court had before it defendants' Motion for Remand and the specific objections to the findings and conclusions of the Referee's Report and chose to deny that motion. We cannot say this was error on the part of the Superior Court.

■ The third and final point raised by defendants is essentially one of insufficiency of the evidence to sustain the judgment. Defendants assert that plaintiffs did not meet their burden of proof on the question of the impropriety of the assessors' valuations, because they did not establish that *"their property was assessed in excess of its just value and that the assessor's judgment was irrational."* At the outset of an analysis of this claim, we note that the taxpayers' case was established by the showing that the methods by which the assessments were made necessarily had the potential for unequal apportionment, even if it was not established that the assessments were in excess of just value. The Maine Constitution requires that:

> All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed *equally*, according to the just value thereof. [Emphasis added] Art. IX, § 8.

The case law is clear that *"[i]t is the taxpayer's burden to show that the assessment was not in conformity with the law." Frank v. Skowhegan,* Me., 329 A.2d 167, 174 (1974). Plaintiffs in this case sought to prove both that their properties were overvalued for assessment purposes and that the methods employed to make the assessment necessarily had a potential for creating un-

equal apportionment of the tax burden. Proving one of these points entitles them to abatements.

From the Referee's Report adopted by the Superior Court in this case, it is apparent that the judgment was based on a finding that the taxpayers had succeeded on both points. We will first examine the question of whether, because the appraisal approach used necessarily had a potential for unequal apportionment, it was error of law for the assessors to use that approach.

The testimony and exhibits establish that the primary basis of the assessments was a formula which was used to arrive at the *"just value"* [5] of the property. The formula used was $10, $15 and $20 per foot for poor, fair and good shore frontage respectively. However, if the shore frontage was not known, the assessors valued property with shore frontage at $400 per acre. The Chairman of the Board of Assessors further testified that:

> *we didn't go exactly by the formula when we knew the property, like sometimes you have got a point of land . . . we wouldn't measure right around the point. We would go right across it. Because we know you couldn't build nothing on that. So, I mean we didn't follow the formula 100% when we knew the property.*

It is clear that the method by which the assessors proceeded to evaluate just value could and usually would result in different valuations being placed upon two pieces of property being exactly the same in size and location. If the property was considered good shore frontage and the exact amount of shore frontage was known, a value of $20 per foot would be fixed. However, if the shore frontage was not known, but only the acreage was indicated, the same property with the same shore frontage would be

---

**3.** *The findings of fact and conclusions of law appear in the Draft Report in narrative rather than list form and in somewhat different order. They have been reproduced in list form for the sake of clarity and analysis.*

**4.** We take this opportunity to urge referees to set out their findings and conclusions as clearly and fully as possible to facilitate the task of court review.

**5.** The formulas are premised on the assumption that *"just value"* is 25% of fair market value.

valued at $400 per acre. The most glaring example of this potential variation cited in the record is that of the Farrelly property. The property had a shore frontage of 430 feet. The chief assessor testified that the quality of the frontage was in the $15–$20 range. Calculated at $20 per foot that would have resulted in a maximum assessment of $8,600. Because the footage was not known, the 65-acre property was valued at $400 per acre for an assessment of $26,-000.

In sum, all shoreline property was not treated the same. The analysis of *Kittery Electric Light Co. v. Assessors of the Town of Kittery*, Me., 219 A.2d 728, 740 (1966) is applicable here. There the Court ruled that a *"violation of the constitutional mandate of equality does not necessarily require proof of actual fraud."*

 Any conscious failure to exercise a fair and impartial judgment, or a conscious resort to arbitrary methods, different from those employed in assessing other property of like character and situation, thereby resulting in imposing an unequal burden on property having the same just value, will invalidate an assessment.

The system by which the assessments were made, having as it did a necessary potential for unequal apportionment of the tax burden, violated the principle of equality mandated by the Maine Constitution, Art. IX, § 8. It follows that the Superior Court Justice acted correctly when he accepted the Referee's Report including the Referee's conclusion that, as a matter of law, *"the 1976 assessments were arrived at arbitrarily and cannot be sustained."* This is true even if, by happenstance, one or more of the assessments in the case approximated *"just value"* for a particular piece of property.

*Where it is impossible to secure both the standards of the true value and the uniformity and equality required by law the latter requirement is to be preferred as the just and ultimate purpose of the law.*

*Spear v. City of Bath*, 125 Me. 27, 29, 130 A. 507, 508 (1925) *quoting* from *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 446, 43 S.Ct. 190, 191, 67 L.Ed. 340, 343 (1923).

Because of our finding that the system employed by the assessors, by its nature, had a necessary potential for discrimination, it becomes unnecessary to discuss whether or not each appellant has established that the amounts assessed on their properties were substantially in excess of just value.

The plaintiffs have made a case entitling them to an abatement. The decision of the Court below was to that effect. Since it was a correct decision, it must be affirmed.

The entry is:

Appeal denied.

Judgment affirmed.

DELAHANTY, J., did not sit.