C. William ANDERSON et al.

v.

KENNEBEC RIVER PULP & PAPER CO., et al.

Supreme Judicial Court of Maine.

Argued Jan. 6, 1981.

Decided Aug. 12, 1981.

Jim Mitchell & Jed Davis, P.A., James E. Mitchell (orally), Augusta, Mark Kierstead, Waterville, for plaintiffs.

Thaxter, Lipez, Stevens, Broder & Micoleau, Sidney St. F. Thaxter, Ronald A. Epstein, Portland, Simpson, Thacher & Bartlett, John W. Ohlweiler, James S. Frank (orally), New York City, for defendants.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN,* ROBERTS and CARTER, JJ.

NICHOLS, Justice.

The Defendants, Kennebec River Pulp & Paper Co., Penntech Papers, Inc. and T. P. Property Corporation, appeal from an order entered in Superior Court, Somerset County, on January 3, 1980, granting the Plaintiffs' motion to attach property owned by the Defendants. On appeal, the Defendants contend that the Plaintiffs' affidavits submitted in support of their motion for attachment failed to set forth sufficiently specific facts as required by M.R.Civ.P. 4A(h). The Defendants further argue that the Superior Court erred in finding a reasonable likelihood that the Plaintiffs would recover a judgment against them in an amount equal to or greater than the amount of the attachment.

We deny the appeal and affirm the order of attachment.

On December 20, 1975, the Kennebec Paper Mill in Madison was closed. Penntech

---

* Glassman, J., sat at oral argument and participated in the initial conference but died before the opinion was adopted.

Papers, Inc., through its subsidiary T.P. Property Corporation, thereafter acquired all the outstanding stock of Kennebec River Pulp & Paper Co. The mill at Madison was then reopened by Kennebec, but was shut down permanently on March 29, 1977.

The Plaintiffs, former salaried employees of Kennebec River Pulp & Paper Co., began suit on March 1, 1978, to recover diverse employment benefits guaranteed by Maine law. The Plaintiffs' complaint alleged, *inter alia*, that following the termination of their employment on or about March 29, 1977, the Defendants failed to provide them with vacation pay due them, severance pay, certain earned wages and a customary termination pay. The Defendants' answer denied the material allegations of the Plaintiffs' complaint and raised several affirmative defenses.

On December 6, 1978, the Plaintiffs filed a motion for attachment, including attachment on trustee process, against the property of the corporate Defendants in the amount of $100,000. Accompanying this motion were nine supporting affidavits.

▌ A hearing on the motion for attachment was held in Superior Court, Somerset County, on October 23, 1979. The

motion was granted on December 31, 1979, the court ordering attachment, including attachment on trustee process, in the amount of $100,000 against the Defendants' property. The Defendants seasonably appeal from this interlocutory order. Our jurisdiction to consider this appeal derives from the collateral order exception to the final judgment rule. *Dartmouth Co. v. Day's, Inc.*, Me., 419 A.2d 366 (1980).[1]

▌ We recently spelled out in *Bowman v. Dussault*, Me., 425 A.2d 1325 (1981), the pertinent requirements for the Superior Court's approval of the prejudgment attachment process. Essentially, the movants' supporting affidavits must set forth sufficiently specific facts to demonstrate a reasonable likelihood that judgment will be recovered, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above the aggregate of any liability insurance available to the defendants. M.R.Civ.P. 4A(c). Our limited function as an appellate court is to review the Superior Court's determination by application of the usual "clearly erroneous" and "abuse of discretion" standards. *Bowman v. Dussault, supra* at 1328.[2]

---

1. The Plaintiffs suggest that the record is inadequate to allow our consideration of the issues raised on this appeal. Specifically, they contend that the Superior Court, in granting the attachment motion, relied upon oral testimony presented at a hearing on an unrelated motion to disqualify an attorney, a transcript of which is not included in the record.

We note initially that in filing a motion, which was denied, in the proceedings below seeking an order requiring preparation of the above transcript, the Plaintiffs failed to follow the correct procedure. M.R.Civ.P. 74(b)(3), as it read before it was amended, effective September 1, 1980, stated in pertinent part:

> If *the appellee* deems a transcript of other parts of the proceedings to be necessary, he shall, within 10 days after the service of the order or certificate and the statement of the appellant, *file and serve on the appellant* a designation of additional parts to be included. Unless within 10 days after service of such designation the appellant has ordered such parts, and has so notified the appellee, the appellee may within the following 10 days either order the parts or move in the Superior

Court for an order requiring the appellant to do so. (emphasis added).

Here, the record does not show that the Plaintiffs *first* served the necessary designation on the Defendants *before* proceeding with its motion in Superior Court.

More significantly, M.R.Civ.P. 4A(c), requiring that the motion for attachment "be supported by affidavit or affidavits," contemplates a nontestimonial proceeding. The motion for attachment and its supporting affidavits constitute the basis for the court's ruling on the motion. Since the essential pleadings and affidavits are included in the record before us, we conclude that the record is adequate to permit full consideration of the issues raised by the Defendants.

2. As in *Bowman, supra* at 1328 n.1, we decline to follow the standard of review suggested in *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.*, Me., 351 A.2d 845, 854 (1976). Even on written evidence and affidavits, we do not substitute our judgment for that of the Superior Court.

We also note from the record that the Defendants withdrew a previously submitted motion

■ M.R.Civ.P. 4A(h) requires that affidavits submitted in support of the prejudgment attachment process "set forth specific facts sufficient to warrant the required findings . . . ."[3] The Defendants' central argument on appeal is that the Plaintiffs' supporting affidavits were set forth in "conclusory fashion" without containing sufficiently *specific facts* to warrant the Superior Court making the "required findings."

We disagree.

■ The findings required by our Rules of Civil Procedure include:

[A] reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above the aggregate of any liability insurance and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment. M.R.Civ.P. 4A(c).

These requirements must be strictly complied with since the prejudgment attachment process is in derogation of the common law. *Englebrecht v. Development Corp.*, Me., 361 A.2d 908, 910–11 (1976).

■ Contrary to the Defendants' assertion that the Plaintiffs' supporting affidavits contain nothing more than "conclusory statements," we find that each affidavit contains specific factual allegations of promises and assurances made by officers of Penntech Papers, Inc. and T. P. Property Corporation to the employee Plaintiffs. These officers, allege the Plaintiffs in their affidavits, urged the Plaintiffs to dedicate themselves to the financial success of Kennebec River Pulp & Paper Co., personally promising that Penntech Papers, Inc. would stand behind their salaries, despite Kennebec's financial difficulties. The Plaintiffs' affidavits further allege that unused vacation time had accrued as the result of these urgings and assurances of the Defendants' officers. Each affidavit specifies the monetary amount allegedly owed each affiant. The sum total of these amounts, together with costs incurred to date,[4] is greater than the amount of the attachment ordered. The affidavit of the Plaintiffs' counsel indicates that of his own knowledge no prior writs of attachment have issued in the case and he is aware of no liability insurance owned by the Defendants. In sum, we find these facts to be sufficiently specific to comply with the rule which the Plaintiffs were invoking. The Superior Court did not abuse its discretion in so ruling.

The Defendants further argue that the Superior Court erred as a matter of law in finding a "reasonable likelihood" that the Plaintiffs will recover judgment in an amount equal to or greater than the amount of the attachment.

We disagree.

In *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.*, Me., 351 A.2d 845 (1976), we discussed in detail the "likelihood of success" requirement of M.R. Civ.P. 4A(c) and construed this requirement as connoting a probability of success or a favorable chance of success. Having reviewed the complaint and affidavits submitted by the Plaintiffs in the instant case, we are unable to conclude that it "so clearly

for findings of fact and conclusions of law. Accordingly, we must proceed on the assumption that the Superior Court found in favor of the Plaintiffs on all material factual issues. *See Farrelly v. Inhabitants of the Town of Deer Isle*, Me., 407 A.2d 302, 305 (1979).

3. M.R.Civ.P. 4A(h) also requires that:
   Affidavits . . . shall be upon the affiant's own knowledge, information or belief; and, so far as upon information and belief, shall state that he believes the information to be true. Contrary to the Defendants' assertion that the Plaintiffs' supporting affidavits were based on information and belief without including a statement that each particular affiant believed the information to be true, the record is clear that each of the Plaintiffs' affidavits was submitted and based upon the affiant's "own knowledge." Insofar as none of the affidavits was based on "information or belief," it was unnecessary for each affiant to include a statement that the information was believed to be true.

4. *See* M.R.Civ.P. 4A(c), which specifies that the amount is to include "interest and costs."

appears" that the Plaintiffs' claim is of such insubstantial character as to foreclose a *reasonable possibility* of recovery.

The Defendants argue on appeal, as they did before the Superior Court, that *United Paperworkers International Union et al. v. Penntech Papers, Inc., et al.,* 439 F.Supp. 610 (D. Me.1977), *aff'd sub nom. United Paperworkers International Union et al. v. T. P. Property Corp. et al.,* 583 F.2d 33 (1st Cir. 1978), precludes their liability for *any* obligations of Kennebec River Pulp & Paper Co. that may be due the Plaintiffs. The sole issue in *United Paperworkers* was whether Penntech Papers, Inc. could be forced to arbitrate pursuant to a collective bargaining agreement entered into between the Union and Kennebec Pulp & Paper Co., prior to Penntech's acquisition of all of Kennebec's outstanding capital stock. 439 F.Supp. at 612. In other words, the "principal question" concerned "the duty of the successor to arbitrate." *Id.* at 615. On appeal, the United States Court of Appeals for the First Circuit agreed that "real issue . . . [was] not successorship as it is commonly understood, but whether parent corporations should be bound to the collective bargaining agreements of their subsidiaries." 583 F.2d at 35.

In its Order of Attachment the Superior Court distinguished *United Paperworkers* from the instant case thus:

[I]n [United Paperworkers], there was no ". . . allegation that Penntech presented [sic] to the unions that it would be re-

sponsible for meeting the terms of the arbitration agreement." [439 F.Supp.] at 621. Here there is such an allegation, which furnishes the basis for an argument that Defendants are estopped from pleading that Penntech is a distinct corporation not bound by Kennebec's obligation.

We find the distinction drawn by the Superior Court to be accurate. The focus of the *United Paperworkers* holding is that there was no allegation or evidence of misconduct by the defendants to justify piercing the corporate veil. 439 F.Supp. at 621. In the case *sub judice*, however, the Plaintiffs' affidavits allege that Penntech officers personally promised and assured the Plaintiffs that Penntech Papers, Inc. would stand behind their salaries despite the financial difficulties of Kennebec River Pulp & Paper Co. Accordingly, the Superior Court properly concluded on these affidavits that specific factual allegations existed to support an estoppel theory.[5]

In sum, we are unable to conclude that the Superior Court clearly erred or abused its discretion by granting the Plaintiffs' motion for attachment. We find the affidavits submitted in support of that motion sufficient to satisfy the governing standards imposed by M.R.Civ.P. 4A.

The entry is:

Appeal denied.

Order approving attachment affirmed.

All concurring.

---

**5.** The Defendants claim the Order of Attachment was erroneously based upon an issue not raised by the pleadings—the theory of estoppel. "The pleader in stating his claim is not required to state his legal theory in any particular form." 1 R. Field, V. McKusick, and L. Wroth, *Maine Civil Practice* § 8.3 (2d ed. 1970). It cannot be said that the Order of Attachment was based on an issue not raised by the pleadings.

Furthermore, the Defendants' contention that no circumstances exist in the instant case to justify piercing the corporate veil and making the parent corporations responsible for their subsidiary's obligations is without merit. It is, of course, public policy that corporations are separate legal entities with limited liability. As such, courts are generally reluctant to disregard the legal entity and will cautiously do so

only when necessary to promote justice. *Bonnar-Vawter, Inc. v. Johnson,* 157 Me. 380, 387, 173 A.2d 141, 145 (1961).

Equitable estoppel is a theory frequently employed to pierce the corporate veil. *See United Paperworkers,* 439 F.Supp. at 617 n.7, *citing inter alia,* Lattin on Corporations, ch. 2 (2d ed. 1971); Henn on Corporations, ch. 7 (2d ed. 1971). *See also G.E.J. Corp. v. Uranium Aire, Inc.,* 311 F.2d 749 (9th Cir. 1962); *Weisser v. Mursam Shoe Corp.,* 127 F.2d 344 (2d Cir. 1942). As emphasized in *Maine Aviation Corp. v. Johnson,* 160 Me. 1, 5, 196 A.2d 748, 750 (1964), "The corporate entity will be disregarded when used to cover fraud or illegality, or to justify a wrong." In other words, the corporate entity will be disregarded when equity so demands.