
Peter and Elizabeth MOSER, et al.

v.

TOWN OF PHIPPSBURG.

Supreme Judicial Court of Maine.

Argued Jan. 11, 1989.

Decided Jan. 31, 1989.

Attorney for plaintiffs did not appear.

Eliot Field (orally), Wiscasset, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

HORNBY, Justice.

We have consistently said that to overturn a real estate tax assessment, a taxpayer must show that the property was "substantially overvalued," or that there was "unjust discrimination" in the apportionment of the tax burden, or that the assessment was "fraudulent, dishonest or illegal." *Delta Chemicals, Inc. v. Town of Searsport,* 438 A.2d 483, 484 (Me.1981); *Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 393 (Me.1981); *Sears, Roebuck & Co. v. City of Presque Isle,* 150 Me. 181, 189, 107 A.2d 475, 479 (1954). Here, no issue is presented on the first or the third factors. Instead, the taxpayers persuaded the Superior Court that they were victims of unjust discrimination, and the Town has appealed. We conclude that substantial evidence in the record as a whole supported the County Commissioners' denial of any abatement, *P.H. Chadbourne & Co. v. Town of Bethel,* 452 A.2d 400, 402 (Me.1982), because the taxpayers failed to show that their properties received an unjust apportionment of the tax burden when compared to other properties in the town. Accordingly, we vacate the judgment of the Superior Court (Sagadahoc County; *Fritzsche, J.*), which had vacated the Sagadahoc County Commissioners' decision upholding the assessment.

■ In 1978 Phippsburg conducted a townwide revaluation. The assessors increased the valuation of all properties by 30 percent in 1982. Then in 1985 the assessors identified certain large-lot subdivisions in close proximity to the Kennebec River as having substantially increased in fair market value (largely due to the cleanup of the Kennebec River) and increased their valuation by fifty percent. Not every structure in the area was included. In addition, certain properties outside the area were included ("unusual architecturally-designed

structures designed to fit a specific lot and structures that gain in value from their unique combination of land and buildings"). The plaintiff taxpayers, owners of real estate in the singled out area, challenged the increase. On appeal, the Sagadahoc County Commissioners heard evidence that included the testimony of the assessors and of an expert private appraiser. The private appraiser found fault with the assessors' adjustment of a particular segment of the town while leaving other areas unadjusted; the across-the-board increase of fifty percent for this area; and the failure to apply the fifty percent increase consistently within the targeted area. The taxpayers introduced no evidence before the Commissioners that the assessment prior to adjustment was a closer approximation of just value. Instead, the thrust of their argument was simply that singling out a specific area of the town for a fifty percent increase was inherently discriminatory. The Commissioners affirmed the assessment. On appeal, the taxpayers persuaded the Superior Court that because of *Farrelly v. Town of Deer Isle*, 407 A.2d 302 (Me.1979), they had to prove only that the assessors' method had "a potential for creating unequal apportionment of the tax burden," *id.* at 306, and that they had done so. The Superior Court accordingly ordered a rollback of the fifty percent increase.

*Farrelly* held:

> Because of our finding that the system employed by the assessors, by its nature, had a *necessary potential* for discrimination, it becomes unnecessary to discuss whether or not each appellant has established that the amounts assessed on their properties were substantially in excess of just value.

407 A.2d at 307 (emphasis supplied). Today we clarify that language. Any assessment method may have a potential for creating discrimination, *i.e.*, unequal apportionment. Certainly the selection of one or a few areas for revision of property values has that potential. But if the underlying assessment has ceased to provide an equal apportionment of the tax burden, the selection of undervalued areas for upward adjustment also has the potential for achieving equal apportionment and should therefore not be prohibited. The language of "potential" in *Farrelly*, therefore, is not particularly helpful; "necessary" is the important word. Only if taxpayers can show that the assessors' system *necessarily* will result in unequal apportionment do they not have to show that their property is substantially overvalued.[1]

■ Townwide revaluations are perhaps the best method of maintaining equal apportionment of the tax burden. (We observe that Phippsburg undertook such a revaluation in 1986.) But assessors are not precluded from undertaking adjustments designed to maintain equal distribution of the tax burden in the time period between townwide revaluations. *Cf. Allegheny Pittsburgh Coal Co. v. County Comm'n*, — U.S. —, —, 109 S.Ct. 633, 638, 102 L.Ed.2d 688 (1989) (equal protection clause "does not require immediate *general* adjustment on the basis of the latest market developments. In each case, the constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners.") (emphasis added). In attacking such adjustments on grounds of unjust discrimination, it is not sufficient for taxpayers to show only that they have the "potential" for discrimination. Instead, they must show that the adjustments necessarily will result in unjust discrimination.

The entry is:

Judgment vacated and remanded to the Superior Court for entry of judgment af-

---

1. In *Farrelly* the assessors' method "necessarily" resulted in unequal apportionment because, as the Court pointed out, the assessors valued property with shore frontage at $10, $15 or $20 per foot, depending on the quality of the land. If, however, they did not know the amount of shore frontage, the assessors valued the proper- ty at $400 per acre. 407 A.2d at 306. As a result, the Farrellys' 65 acre parcel, with shore frontage of 430 feet, was valued at $26,000 ($400 per acre) rather than $8600 ($20 per foot), simply because the assessors did not know the amount of shore frontage. *Id.* at 307.

firming the County Commissioners' denial of the abatements.

All concurring.