Laurence N. WESSON et al.

v.

TOWN OF BREMEN et al.

Supreme Judicial Court of Maine.

Argued Sept. 19, 1995.
Decided Nov. 21, 1995.

Eliot Field (orally), Wiscasset, for plaintiff.

Jonathan C. Hull (orally), Damariscotta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

Laurence N. Wesson and Anne W. Wheatley, trustees of the Laurence G. Wesson and Eleanor R. Wesson Irrevocable Trust, appeal from a judgment entered in the Superior Court (Lincoln County, *Perkins, J.*) affirming the denial by the Bremen Board of Assessment Review of their request for an abatement. The Trustees contend that the method of assessment was improper, their property was substantially overvalued, the assessors failed to consider the conservation easement on their property, and they did not receive a fair hearing before the Board. We affirm the Judgment.

In 1989, as part of the decennial revaluation, the Town of Bremen retained Parker Appraisal Company to perform a mass appraisal. The Trust owns substantially all of Oar Island located in the Town. Approximately twenty-seven acres and sixty-five percent of the shoreline of Oar Island is subject to a conservation easement. During the revaluation, the Trust's land value was assessed at $1,168,800. Pursuant to 36 M.R.S.A. § 841 (1990), the Trustees applied to the Board of Assessors for an abatement of $1,064,650. Following the assessor's denial of their application, the Trustees appealed to the Board, pursuant to 36 M.R.S.A. § 843 (1990).

Before the Board the Trustees argued that the Town's use of the straight-line assessment method [1] was inappropriate because it was applied regardless of the shape of the property and regardless of the actual shore frontage and thus necessarily had the potential for unequal apportionment (i.e., the owner of an island in the approximate shape of a circle and the owner of a narrow island as long as the other is wide would each pay the same taxes). The Trustees also argued that their land was substantially overvalued,[2] and that the assessors failed to consider the impact of the conservation easement on their assessment. In support of their contentions the Trustees presented data to show that the per front foot value of similar island property was substantially lower than the Parker appraisal.[3] John Hilton, a local real estate broker, testified that he appraised the

---

1. Shore front property was valued on a front-foot basis for the first 100 feet, with a discount applied for the excess frontage. For shore front property, a "straight-line" method was used to calculate the front footage of the shoreline. For Oar Island, which has approximately 7,000 feet of shoreline, the assessor measured the longest straight-line distance through the island from one tip to the other. The distance came to 3,200 feet and the assessor used that figure for shore footage. The front-foot prices were computed by using sales data from property sales in Bremen and Friendship in 1987 and 1988. After comparing island shore front sales to mainland shore front sales, island shore front was valued at fifty percent of the value of the adjacent mainland shore front. The mainland shore opposite to Oar Island was valued at $1,800 per front foot. The value of the Trust's land was calculated by multiplying 3,200' (the straight-line frontage figure) by

$900 per foot (50% of $1,800) resulting in $2,880,000. The assessor then reduced this amount by 60% to adjust for excess frontage and the easement. The twenty-one acres of back land more than 150 feet from the shore were valued at $16,500 and $300 for "wasteland." The Trust's total land valuation was $1,168,800.

2. The Trustees did not dispute the assessed value of the buildings and improvements.

3. The Trustees' data was based on asking prices on island properties listed in *Down East* magazine from March through September 1989 and information received from listing brokers. They applied the Parker Appraisal formula in reverse, deducting the estimated values of buildings and back land and calculated the asking price per foot of shore front from the balance.

Trust's property in 1975, and found that the property's value had been reduced by 52.6% because of the easement restrictions. Hilton also testified that Robert Gingras of Parker Appraisal had stated that conservation easements were not taken into consideration in the appraisal process because they benefit the property owners and generally have no effect on property values.

Bob Wilson, an appraiser from Parker Appraisal, testified that he considered the easement but found that it had no effect on the appraised value of the property. Wilson explained that the straight-line method is used for island property because it is the least expensive method for doing a mass appraisal.

Following the hearing, the Board determined that the Trustees had not met their burden of proving that the method used in assessing island property or its application to their property was erroneous and it denied the abatement. The Board also denied the Trustees' request for reconsideration. Pursuant to M.R.Civ.P. 80B, the Trustees sought review by the Superior Court. After a hearing a judgment was entered affirming the Board's decision and the Trustees appealed.

█ We review directly the Board's decision for an abuse of its discretion, error of law or findings unsupported by substantial evidence in the record. *Muirgen Properties, Inc. v. Town of Boothbay,* 663 A.2d 55, 58 (Me.1995) (citing *Town of Vienna v. Kokernak,* 612 A.2d 870, 872 (Me.1992)).

█ The Maine Constitution requires that: "All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8. An assessor's valuation is presumed valid, and the taxpayer has the burden to prove it is "manifestly wrong." *Muirgen Properties,* 663 A.2d at 58 (quoting *Town of Steuben v. Lipski,* 602 A.2d 1171, 1172 (Me.1992)). That presumption can be overcome if the taxpayer proves "that the assessed valuation *in relation to the just value* is 'manifestly wrong.'" *City of Waterville v. Waterville Homes, Inc.* 655 A.2d 365, 367

(Me.1995) (quoting *Delta Chems., Inc. v. Town of Searsport,* 438 A.2d 483, 484 (Me. 1981)) (emphasis in *Waterville Homes* ). A taxpayer seeking an abatement must prove that "[t]he judgment of the assessors was irrational or so unreasonable in light of the circumstances that the property is substantially overvalued and an injustice results; [t]here was unjust discrimination; or [t]he assessment was fraudulent, dishonest, or illegal." *Muirgen Properties,* 663 A.2d at 58 (quoting *Kokernak,* 612 A.2d at 872).

"Although the Legislature has established 'minimum assessing standards' with which the assessors must comply, 36 M.R.S.A. § 327, it has stopped short of setting forth in the statutes the different methods which local assessors may utilize to achieve such results." *Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 389–90 (Me.1981); *see* 36 M.R.S.A. § 326 (1990). Local assessors have been given considerable leeway in choosing the method or combinations of methods to achieve just valuations. *Shawmut Inn,* 428 A.2d at 390.

█ In support of their contention that the straight-line method is improper because it necessarily has the potential for unequal apportionment, the Trustees rely on *Farrelly v. Town of Deer Isle,* 407 A.2d 302 (Me.1979). In *Farrelly* we held that because the assessment method employed necessarily had the potential for unequal apportionment the taxpayers need not establish that their property was substantially overvalued. *Id.* at 306–307. The *Farrelly* holding, however, was limited in *Moser v. Town of Phippsburg,* 553 A.2d 1249, 1250 (Me.1989), where we clarified the language of *Farrelly* by explaining that "it is not sufficient for taxpayers to show only that they have the 'potential' for discrimination." We noted that "[a]ny assessment method may have a potential for creating discrimination, i.e., unequal apportionment." *Id.* In *Moser* we held that "[o]nly if taxpayers can show that the assessors' system *necessarily* will result in unequal apportionment do they not have to show that their property is substantially overvalued." *Id.*[4]

---

4. In *Farrelly* the assessors valued property with shore frontage at $10, $15, or $20 per foot,

depending on the land's quality. *Farrelly v. Town of Deer Isle,* 407 A.2d 302, 306 (Me.1979).

 Although the assessment method used in the present case theoretically may result in unequal apportionment, we do not find that the Trustees have proven that it necessarily will result in unequal apportionment. The Board found that the Trustees' analysis contained numerous flaws.[5] Furthermore, the Trustees did not meet their burden to establish that their property was substantially overvalued. If the taxpayer seeking abatement fails to present credible evidence of just value, the Board has no way of comparing the assessment and the taxpayer's view of just value. *Waterville Homes,* 655 A.2d at 367. We conclude that the Board was not compelled to find that the easement was not considered or that it reduced the value of the land. The Trustees failed to present any evidence of the value of the property with or without the conservation easement for the applicable tax year.[6]

 Because the Trustees did not meet their burden to show that their assessment was manifestly wrong, the Board was not compelled to grant an abatement.[7] *See Glenridge Dev. Co. v. City of Augusta,* 662 A.2d 928, 931 (Me.1995) (quoting *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 604 A.2d 908, 909 (Me.1992)) (" '[b]ecause the taxpayer has the burden of proof, we will vacate the [Board's] decision only if the evidence compelled [it] to grant an abatement....' ").

The entry is:

Judgment affirmed.

All concurring.

---

If they did not know the shore frontage amount, however, the property was valued at $400 per acre. *Id.* This method of assessment "necessarily" resulted in unequal apportionment. *Moser v. Town of Phippsburg,* 553 A.2d 1249, 1250 n. 1 (Me.1989).

5. The Board reasoned that the Trustees' data was flawed because it was based on asking prices, not sale prices of property. The sale price of property is evidence of market value, which is used in determining property value for tax assessment purposes. *Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 394–95 (Me.1981). Also, the Board found that the Trustees did not use the straight-line method for calculating the amounts of shoreline. In addition, the Board could not check the Trustees' calculations and the Trustees' study did not limit its comparison to island properties similar to Oar Island.

6. The Trustees also contend that they did not receive a fair hearing before the Board, in violation of their due process rights. The Trustees contend that the Town's counsel, who acted as counsel for the Board, participated in an adversarial capacity towards them and they were not represented by counsel. In the administrative area the requirements of due process are flexible and do not entail a specific form or procedure. *Town of Vienna v. Kokernak,* 612 A.2d 870, 874 (1992). The Board hearing allowed both parties an opportunity to present their evidence and cross-examine witnesses, the Trustees received a copy and an explanation of the rules of procedure for the Board hearing, and they were informed that they could be represented by counsel if they chose.

7. In light of our decision we need not rule on the defendants' motion to strike all or portions of the Trustees' brief and addendum that are based on matters outside the record. We strongly disapprove, however, of the practice of counsel supplementing the record on appeal. " '[S]ua sponte supplementation of the record on appeal is not permitted and must be disregarded.' " *McLaughlin v. Sy,* 589 A.2d 448, 451 (Me.1991) (quoting *National Council on Compensation Ins. v. Superintendent of Ins.,* 481 A.2d 775, 781 (Me. 1984)).