Richard WEEKLEY et al.

v.

TOWN OF SCARBOROUGH.

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 20, 1995.

Decided May 21, 1996.

William H. Dale, Jensen Baird Gardner & Henry, Portland, for Plaintiffs.

F. Paul Frinsko, Bernstein, Shur, Sawyer & Nelson, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

The Town of Scarborough appeals from the judgment entered in the Superior Court (Cumberland County, *Brennan, J.*) in favor of Richard and Margaret Weekley granting the relief requested on their complaint, pursuant to 36 M.R.S.A. § 843(1) (Supp.1995) and M.R.Civ.P. 80B, seeking judicial review of the decision of the Scarborough Board of Assessment Review (Board) denying their petitions for a tax abatement. Because the trial court was without authority to determine the just value of the assessed property, we modify the court's decision, and as modified, affirm the judgment.

The record developed before the Board discloses that: The Weekleys own two parcels of land located at Prout's Neck in Scar-

borough. They purchased lot 52 in January 1991 for $235,000 and lot 7 in September 1992 for $250,000. On April 1, 1993, the tax assessor for the Town assessed lot 52 at a value of $345,300 and lot 7 at a value of $318,800.[1] Pursuant to 36 M.R.S.A. § 841 (1990 & Supp.1995), the Weekleys filed two applications with the Town's assessor seeking an abatement of the assessed property taxes, which the assessor denied. The Weekleys appealed the denial to the Town's Board of Assessment Review pursuant to 36 M.R.S.A. § 843, contending that the assessed values were unreasonably high in light of the recent sale price of each of the respective lots. In support of their contention, the Weekleys offered the following evidence: (1) sales of comparable parcels in the area supported a fair market value consistent with the sale price of the two disputed lots; (2) the transactions resulting in their purchase of the two parcels were executed at arm's length; (3) both lots had been on the market for some time prior to each sale to the Weekleys; (4) the properties were advertised in, among other publications, the *Wall Street Journal*, the *New York Times, Yankee Magazine* and *Downeast Magazine;* (5) the sellers provided notice of the lots' availability by direct mail to other owners of property at Prout's Neck and 30 other real estate agencies; (6) the sellers had received multiple offers prior to accepting the Weekleys' offers; and (7) the Weekleys' real estate agent, whose agency handled 95% to 99% of the sales of real property at Prout's Neck, opined that the prices paid for the properties reflected their respective fair market value.

To support the contention that the comparable sales offered by the Weekleys were not truly comparable to the parcels in dispute, the assessor, without explanation, submitted a sales ratio analysis comparing sale prices with assessment values for the period from 1991 to August 1993 to demonstrate he was not over-assessing the properties located on Prout's Neck. Although it was undisputed

that the average Prout's Neck property was assessed at 108% of its sale price, the analysis disclosed that lots 52 and 7 were assessed at 147% and 128% of their sale prices, respectively. The Board concluded that the lots were fairly assessed and denied the Weekleys' appeal. The Weekleys filed the present action seeking a judicial review of the Board's decision.

Following a hearing on the Weekleys' complaint, the trial court remanded the matter to the Board for further findings of fact and conclusions of law as to whether the sales to the Weekleys were commercially reasonable and, if so, whether the assessments of 147% and 128% were reasonable in light of the average of 108%. Without specifically addressing in its findings and conclusions the issues raised by the court, the Board concluded the Weekleys had failed to meet their burden of proof and affirmed its original denial of the Weekleys' appeal. Following further hearings, the court issued its order granting the relief requested by the Weekleys, establishing each parcel's assessment value at its original sales price of $235,000 and $250,000 and directing the Town to reimburse the Weekleys pursuant to 36 M.R.S.A. § 506–A (1990).[2] The Town appeals.

The Town contends that, based on the evidence presented at the hearing, the Board properly denied the Weekleys' requests for tax abatement. We disagree. When, as here, the Superior Court acts as an appellate tribunal in reviewing the determination of the Board, we review directly the decision of the Board "for abuse of discretion, errors of law, or findings unsupported by substantial evidence in the record." *Central Maine Power v. Town of Moscow,* 649 A.2d 320, 322 (Me.1994) (citing *Town of Vienna v. Kokernak,* 612 A.2d 870, 872 (Me. 1992)). When a taxpayer challenges the assessment of residential property, an appeal from the assessment may be taken pursuant to 36 M.R.S.A. §§ 841–850 (1990 & Supp. 1995). The burden is on the taxpayer to

1. In 1993, property within the Town was assessed at 100% of its value.

2. 36 M.R.S.A. § 506–A provides in pertinent part:

Except as provided in section 506, a taxpayer who pays an amount in excess of that finally assessed shall be repaid the amount of the overpayment plus interest from the date of overpayment at a rate to be established by the municipality.

establish before the Board of Assessment Review that "the assessed valuation *in relation to the just value* is 'manifestly wrong.' " *City of Waterville v. Waterville Homes, Inc.,* 655 A.2d 365, 366–67 (Me.1995) (quoting *Delta Chemicals, Inc. v. Inhabitants of Searsport,* 438 A.2d 483, 484 (Me.1981)). Because the Board concluded that the Weekleys failed to meet that burden, "we will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference." *Douglas v. Board of Trustees,* 669 A.2d 177, 179 (Me.1996) (citations omitted).

■ The Maine Constitution requires that "[a]ll taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8. "Just value" means market value. *Alfred J. Sweet, Inc. v. City of Auburn,* 134 Me. 28, 31, 180 A. 803 (1935). "The sale price of property is evidence of market value, which is used in determining property value for tax assessment purposes." *Wesson v. Town of Bremen,* 667 A.2d 596, 599 n. 5 (Me.1995). *See also Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 394–95 (Me.1981) ("market value" is "the price a willing buyer would pay a willing seller at a fair public sale . . . in a free and open market."); *Arnold v. Maine State Highway Comm'n,* 283 A.2d 655, 658 (Me. 1971) ("evidence of what the property sold for in a bona fide sale is *most significant.* ") (citation omitted).

■ Here, the trial court properly determined that the record before the Board compels the conclusions that the assessed valuation of the two lots in relation to their just value is manifestly wrong. *See Arnold,* 283 A.2d at 658 ("An actual sale very near to the time at which the value is to be fixed is of 'great weight' as contrasted with mere opinion evidence.") (citation omitted). The court was without authority, however, to determine the just value of the two lots or to grant relief in the nature of an abatement of the taxes assessed on the lots. *South Portland Assoc. v. South Portland,* 550 A.2d 363, 369 (Me.1988). The Weekleys' abatement requested must go back to the Board for determination of the just value of the lots.

The entry is:

Judgment modified to delete the assessed value placed on Lot 52 and Lot 7. Remanded to the Superior Court for remand to the Scarborough Board of Assessment Review for further proceedings consistent with the opinion herein.

ROBERTS, RUDMAN, and DANA, JJ., concurring.

LIPEZ, Justice, with whom WATHEN, Chief Justice, joins, dissenting.

I respectfully dissent. The evidence before the Scarborough Board of Assessment Review did not compel a decision in favor of the taxpayer. I would vacate the decision of the Superior Court and remand for the entry of a judgment affirming the Board's denial of the Weekleys' petition for a tax abatement.

A municipality's property valuation is presumed to be valid. *Glenridge Dev. Co. v. City of Augusta,* 662 A.2d 928, 931 (Me.1995) (citations omitted). To demonstrate their entitlement to an abatement, the Weekleys had the burden of proving that the assessed valuation of their property in relation to its just value was manifestly wrong. *City of Waterville v. Waterville Homes, Inc.,* 655 A.2d 365, 366–67 (Me.1995) (citations omitted). When the Board denies the abatement based on the taxpayers' failure to sustain their burden of proof, the reviewing court must determine whether this negative conclusion is supported by substantial evidence on the record as a whole. *Bruk v. Town of Georgetown,* 436 A.2d 894, 898–99 (Me.1981). In such circumstances, the reviewing court can reverse the Board's determination only "if the record compels a contrary conclusion to the exclusion of any other inference and, hence . . . the Board's failure to be persuaded was 'arbitrary or capricious.' " *Douglas v. Board of Trustees,* 669 A.2d 177, 179 (Me.1996) (citations omitted). The record in this case does not compel such a finding.

The Weekleys' evidence of the value of their properties before the Board consisted only of the sale price paid by the Weekleys some fifteen months earlier for lot 52 and

some seven months earlier for lot 7; the sale price information concerning four purportedly "comparable" properties in the Prout's Neck area sold between 1992 and 1993; and the opinion of the Weekleys' real estate agent that the price paid by the Weekleys for their properties reflected their fair market value. The Weekleys presented no appraisal testimony or any other testimony to support their application for abatement.

The Weekleys' reliance on the sale price of their property is insufficient to sustain their abatement petition. We have repeatedly held that sale price alone is not conclusive evidence of a property's value. Rather, it is only one factor to be considered in the determination of a "just value" for tax assessment purposes. *Wesson v. Town of Bremen,* 667 A.2d 596, 599 n. 5 (Me.1996) (sale price of property is evidence of market value which is used in determining property value for tax assessment purposes); *Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 394–95 (Me.1981) (recent public sale is evidence of market value but the weight to be given such sale depends upon petitioner's ability to show that sale price was indicative of price on the open market); *Sears, Roebuck & Co. v. City of Presque Isle,* 150 Me. 181, 188, 107 A.2d 475, 479 (1954) (actual sale shows "what is paid, not what exact value is"); *Alfred J. Sweet, Inc. v. City of Auburn,* 134 Me. 28, 32, 180 A. 803, 804–05 (1935) (when price is not indicative of value assessor need not rely solely on price). *Cf. Kittery Electric Light Co. v. Assessors of Town of Kittery,* 219 A.2d 728, 737 (Me.1966) (market value must be determined by consideration of all factors calculated to influence an assumed buyer and seller in reaching a fair market price). Despite our consistent holdings that the sale price is not conclusive evidence of property value for tax assessment purposes, the Court departs from these precedents and accords determinative weight to the sale price in reaching its conclusion that the record before the Board compelled the conclusion that the Assessor's assessment was "manifestly wrong."

This conclusion is especially troublesome in light of the considerable evidence presented by the Assessor, a certified Maine assessor qualified to provide expert testimony about property values, who testified that in determining the assessed values of the subject properties he had used the same appraisal methodology that he had routinely applied to all properties in the Prout's Neck area of Scarborough. Additionally, through his testimony and the cross examination of the Weekleys' real estate agent, the Assessor presented evidence that the four comparables offered by the Weekleys had been sold at something less than their market value. One lot was not listed on the open market and had been sold directly to an abutting land owner; another had been purchased by a present Prout's Neck land owner; another of the comparables was sold by a nursing home patient who was experiencing family and financial problems; and the price of the final comparable was adversely affected by the presence of a low-quality, defective structure on the lot. Finally, the Assessor presented evidence that of the thirteen lots sold in the Prout's Neck area from January of 1991 until August of 1993 only the Weekleys' lots and one other lot had assessment ratios that exceeded 120%.[1]

1. The Assessor attempted to defend his assessment of the Weekleys' properties by submitting to the Board a sales ratio study of properties in the Prout's Neck area of Scarborough. The study computed the "assessment ratio" of thirteen properties by dividing the sale price of each property by its assessed value. The data used in this study can be summarized as follows:

| Date | Sales Price | Assessment | Ratio | |
|------|-------------|------------|-------|---|
| 12/91 | 950,000 | 797,400 | 84% | |
| 7/93 | 800,000 | 695,800 | 87% | |
| 9/92 | 375,000 | 358,400 | 96% | |
| 9/91 | 585,000 | 581,900 | 99% | |
| 6/92 | 841,300 | 881,200 | 105% | |
| 10/93 | 250,000 | 264,800 | 106% | |
| 4/92 | 637,300 | 678,800 | 107% | |
| 7/92 | 300,000* | 439,400 | 110% | |
| 9/93 | 295,000 | 325,100 | 110% | |
| 2/92 | 306,200 | 359,700 | 117% | |
| 11/92 | 250,000 | 318,800 | 128% | (Lot 7) |
| 1/91 | 235,000 | 345,300 | 147% | (Lot 52) |
| 2/93 | 182,000 | 407,900 | 224% | |

* this sale price was for only 75% of the property.

Dropping the upper and lower quartile, the Assessor concluded that his "average assessment ratio" in the Prout's Neck area of Scarborough was 108%. The Court, at least in part, relies on the wide disparity between the "average assessment ratio" of 108% and the assessment ratio for

Based on this evidence, the Board could have reasonably drawn several conclusions. First, that the price paid by the Weekley's for their properties was not dispositive of their current just value. Second, to the extent that the purchase price was relevant, the passage of time since the sales had further eroded the materiality and significance of the past purchase price to the determination of the current just value of these lots. Third, that the circumstances of the allegedly comparable transactions presented by the Weekleys to support their abatement petition tended to depress the price garnered from the sale of each of these properties, thereby lessening their utility as indicators of the value of the Weekleys' lots. *See Muirgen Properties, Inc. v. Town of Boothbay,* 663 A.2d 55, 59 (Me.1995) (evidence that properties had no view or access to water, abutted poor quality properties and had low sale prices because they were not the result of arms-length transactions sufficiently rebutted plaintiff's contention that such properties were comparable). Fourth, that the disparity between sale price and assessed value of the Weekleys' lots resulted not from an erroneous assessment of these lots, but rather from the transfer of the property at an abnormally low sale price.

"The petitioner for an abatement must prove his case. He must show that the property is overrated." *City of Waterville,* 655 A.2d at 366 (quoting *Sears, Roebuck & Co. v. City of Presque Isle,* 150 Me. 181, 186,

107 A.2d 475, 477 (1954)). Based on the minimal and largely discredited evidence of just value presented by the taxpayers in this instance, the Board could have reasonably concluded that the taxpayers had failed to provide it with credible evidence of just value, and, hence, that the taxpayers had failed to meet their burden of proof. *Wesson,* 667 A.2d at 599 (petitioners for abatement must provide credible evidence of just value to meet their burden of proof). This record did not compel the Board to reach a contrary conclusion and, therefore, its failure to be persuaded was not arbitrary or capricious. *See Glenridge Dev. Co.,* 662 A.2d at 931 (quoting *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 604 A.2d 908, 909 (Me. 1992) ("Because the taxpayer has the burden of proof, we will vacate the [Board's] decision only if the evidence compelled [it] to grant an abatement ...")).

I would vacate the judgment of the Superior Court and remand for entry of a judgment affirming the Scarborough Board of Assessment Review's denial of the Weekleys' petition for a tax abatement.

each of the Weekleys' two pieces of property, 128% for lot 7 and 147% for lot 52, to support its conclusion that the record before the Board compelled the conclusion that the assessed valuation was "manifestly wrong." This reliance is misplaced.

Deviation from an average assessment ratio is not conclusive evidence of an unjust assessment. Indeed, the State of Maine Assessment Manual states that "[a]verage assessment ratios are seldom conclusive evidence of sound assessment administration." STATE OF MAINE, ASSESSMENT MANUAL XI–1 (1988). The fact that the assessed values of the Weekleys' properties fell within the upper quartile of the Assessor's sales ratio analysis is of little significance and is certainly not fatal to the Assessor's valuation of the property. Indeed, the Weekleys' high assessment ratio represents little more than a numerical rendition of their claim that the assessed values of their properties exceed the price they paid for these properties.

Nevertheless, the Assessor's sales ratio study does have some evidentiary value that favors the Assessor's position. Of the thirteen properties listed only three, two of which were the Weekleys' properties, had individual assessment ratios that exceeded 120% of their sale price. The fact that the remaining properties included in the study had lower assessment ratios corroborates the Assessor's contention that he accurately estimated property values. Moreover, in light of the demonstrated accuracy of the Assessor's valuation method, the fact that both of the sales ratios for the Weekleys' properties deviated so strikingly from the other assessments lends further support to the Assessor's contention that the sale price the Weekleys paid for their properties was substantially less than the market value of these properties, and, therefore, that these sale prices were not a good indication of value for assessment purposes.